## GALIEN TOWNSHIP SCHOOL DISTRICT v
## DEPARTMENT OF EDUCATION

Docket Nos. 317734 and 317739. Submitted August 5, 2014, at Lansing.
Decided August 14, 2014, at 9:00 a.m. Vacated in part and
remanded (as to Galien Twp School Dist) at 497 Mich ___. Leave to
appeal denied (as to Delton-Kellogg Schools) at 497 Mich ___.

Galien Township School District filed a claim of appeal in the Ingham
Circuit Court related to a final decision by the Department of
Education and the Superintendent of Public Instruction. In the same
document, Galien and Delton-Kellogg Schools brought an action for
declaratory relief against the department and the superintendent in
connection with the same administrative proceedings. Defendants
had audited both school districts' pupil-attendance records and,
unable to verify the enrollment of numerous students, reduced state
school aid for both districts, following which they sought administra-
tive review. Galien exhausted its administrative remedies. In Galien's
first-level review, the department reinstated full-time equivalents
(FTEs) related to some of the students for purposes of calculating
school aid. Galien then sought further administrative review, request-
ing the reinstatement of additional FTEs. The superintendent con-
ducted the final review, which resulted in the reinstatement of
approximately two additional FTEs. Delton-Kellogg did not exhaust
its administrative remedies. In its first-level review, the department
reinstated numerous FTEs. Delton-Kellogg appealed to the superin-
tendent, but that appeal remained pending when the instant action
was filed. The court, Rosemarie E. Aquilina, J., granted the school
districts a declaratory judgment, determining that defendants did not
have the authority to retroactively audit them. The court also
overruled the superintendent's final decision that reduced Galien's
state aid because of the findings of the retroactive audits and ordered
defendants to reinstate all wrongfully deducted FTEs and return
state aid. Defendants appealed in Docket No. 317734 with respect to
Delton-Kellogg, and appealed by leave granted in Docket No. 317739
with respect to both districts. The Court of Appeals consolidated the
appeals.

The Court of Appeals *held*:

1. Because Delton-Kellogg failed to exhaust its administrative
remedies, the circuit court lacked jurisdiction over all of Delton-

Kellogg's claims. MCL 24.301 provides for judicial review, but requires the party seeking review to first exhaust all administrative remedies available within the agency unless review of the agency's final decision or order would not provide an adequate remedy, that is, if it would run counter to the policies that underlie the doctrine. The policies requiring the exhaustion of administrative remedies include the following: (1) an untimely resort to the courts might result in delay and disruption of an otherwise cohesive administrative scheme, (2) judicial review is best made with a full factual record developed before the agency, (3) resolution of the issues might require the technical competence of the agency or might have been entrusted by the Legislature to the agency's discretion, and (4) a successful agency settlement of the dispute might render a judicial resolution unnecessary. Delton-Kellogg submitted to the administrative procedure, but disrupted the progression of the otherwise cohesive process by seeking relief in the circuit court. Further, it was partially successful at the first level of review. Full review through the administrative process might result in the reinstatement of all contested FTEs, which would provide the relief requested, rendering judicial review unnecessary. The interests of judicial economy were not served by interrupting the administrative process.

2. Galien's act of combining its claim of appeal and claim for declaratory relief in a single pleading did not divest the circuit court of subject-matter jurisdiction. Under MCL 600.631 and MCR 7.103(A), a circuit court has subject-matter jurisdiction over a claim of appeal from a final administrative order or decision. A circuit court has jurisdiction over a claim for declaratory relief under MCR 2.605(A)(1) and (2) if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than declaratory judgment, regardless of whether other relief is or could be sought or granted. Given that the circuit court has jurisdiction to hear appeals regarding final orders or decisions of the department, it also had jurisdiction over Galien's claim for declaratory relief and the existence of an appeal did not void that jurisdiction.

3. The circuit court, however, did not have jurisdiction to grant declaratory relief in this case because substantively the claim failed to address a future harm as required by MCR 2.605, which requires a case of actual controversy as a condition precedent to invocation of declaratory relief. Generally, an actual controversy exists when a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights. While Galien styled the relief requested as declaratory

relief, asserting that future retroactive audits might compel it to refund additional state-aid monies, the audits had already been completed, they were decided against Galien, and the department reduced current and future school aid over a number of years to make up the deficiency revealed by the audits. These facts established instead a current conflict between Galien and the department that was based on a past controversy.

4. The circuit court erred by concluding that the department did not have the authority to retroactively audit the districts and adjust their state school aid. The State School Aid Act, MCL 388.1601 *et seq.*, governs the allocation of school aid among school districts. MCL 388.1615, MCL 388.1618, and MCL 388.1768 empower the department to audit districts and to do so retroactively to gather updated data for prior fiscal years. The department may use this updated data to make deductions from a district's school aid allocation for incorrect allocations related to a prior fiscal year.

Order vacated in its entirety in Docket No. 317734, and Delton-Kellogg directed to exhaust its administrative remedies.

Order vacated in its entirety in Docket No. 317739, and case remanded for reinstatement of the superintendent's March 14, 2013 final decision.

1. COURTS — CIRCUIT COURTS — SUBJECT-MATTER JURISDICTION — ADMINISTRATIVE APPEALS — DECLARATORY RELIEF — PLEADINGS.

Under MCL 600.631 and MCR 7.103(A), a circuit court has subject-matter jurisdiction over a claim of appeal from a final administrative order or decision; under MCR 2.605(A)(1) and (2), a circuit court has jurisdiction over a claim for declaratory relief if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than declaratory judgment, regardless of whether other relief is or could be sought or granted; the jurisdiction to hear appeals regarding final orders or decisions of an agency may coexist with the court's jurisdiction over a claim for declaratory relief, and the combining of a claim of appeal and a claim for declaratory relief in a single pleading does not divest the circuit court of subject-matter jurisdiction.

2. SCHOOLS — STATE SCHOOL AID — AUDITS — RETROACTIVE AUDITING — DEPARTMENT OF EDUCATION.

The State School Aid Act, MCL 388.1601 *et seq.*, governs the allocation of school aid among school districts; MCL 388.1615, MCL 388.1618, and MCL 388.1768 empower the Department of Education to audit school districts, including doing so retroactively to gather updated data for prior fiscal years; the department may

use this updated data to make deductions from a district's school aid allocation for incorrect allocations related to a prior fiscal year.

*Thrun Law Firm, PC* (by *Margaret M. Hackett* and *Jennifer K. Johnston*), for Galien Township School District.

*Thrun Law Firm, PC* (by *Robert A. Dietzel* and *Jennifer K. Johnston*), for Delton-Kellogg Schools.

*Bill Schuette*, Attorney General, *Aaron D. Lindstrom*, Solicitor General, and *Travis Comstock*, Assistant Attorney General, for the Department of Education and the Superintendent of Public Instruction.

Before: SAAD, P.J., and OWENS and K. F. KELLY, JJ.

PER CURIAM. In these consolidated appeals, defendants—the Michigan Department of Education (MDE) and the Superintendent of Public Instruction—appeal as of right, in Docket No. 317734, a circuit court order that granted plaintiff Delton-Kellogg Schools a declaratory judgment, determining that defendants did not have the authority to retroactively audit plaintiff. In Docket No. 317739, the same defendants appeal by leave granted[1] the same circuit court order, which also granted plaintiff Galien Township School District declaratory judgment for the same reasons. The circuit court order also overruled the superintendent's final decision that reduced Galien's state aid because of the findings of the retroactive audits and ordered that defendants reinstate all wrongfully deducted full-time equivalent students (FTEs) and return state aid. In Docket No. 317734, we conclude that the circuit court

---

[1] *Galien Twp Sch Dist v Superintendent of Pub Instruction*, unpublished order of the Court of Appeals, entered December 18, 2013 (Docket No 317739).

did not have subject-matter jurisdiction over Delton-Kellogg's claims and vacate the circuit court's order in its entirety. In Docket No. 317739, we vacate the circuit court's order in its entirety and remand for reinstatement of the superintendent's final decision.

### I. BACKGROUND

After plaintiffs admitted teacher misconduct in reporting student attendance, defendants claimed authority under the State School Aid Act (SSAA), MCL 388.1601 *et seq.*, and audited prior years' attendance records. The audit could not verify 225.75 FTEs enrolled in Galien Township School District and 408.75 FTEs enrolled in Delton-Kellogg Schools. On the basis of these retroactive audits, defendants reduced approximately $750,000 from state aid for Galien and approximately $1.5 million for Delton-Kellogg. Both school districts sought administrative review. Galien exhausted its administrative remedies, and in a first-level review, the MDE reinstated 35.27 FTEs. Galien sought further administrative review, requesting that 190.38 additional FTEs be reinstated. Superintendent of Public Instruction Michael Flanagan conducted the final review and issued his report on March 14, 2013. The final administrative review resulted in 1.84 additional reinstated FTEs. Galien then filed the instant action, including a claim of appeal, in the circuit court.

Delton-Kellogg, on the other hand, did not exhaust its administrative remedies. In a first-level review, the MDE reinstated 162.4 FTEs. Delton-Kellogg appealed to the superintendent, and that appeal remains pending. In the meantime, Delton-Kellogg brought the instant action in the circuit court.

## II. SUBJECT-MATTER JURISDICTION

### A. DOCKET NO. 317734

Defendants argue that the circuit court erred by holding that it had subject-matter jurisdiction over all of Delton-Kellogg's claims because Delton-Kellogg failed to exhaust all the administrative remedies available. We agree. "Whether a court has subject matter jurisdiction is a question of law that we review de novo." *Bruley Trust v Birmingham*, 259 Mich App 619, 623; 675 NW2d 910 (2003) (citation omitted).

MCL 24.301 addresses judicial review in the context of administrative exhaustion:

> When a person has exhausted all administrative remedies available within an agency, and is aggrieved by a final decision or order in a contested case, whether such decision or order is affirmative or negative in form, the decision or order is subject to direct review by the courts as provided by law. Exhaustion of administrative remedies does not require the filing of a motion or application for rehearing or reconsideration unless the agency rules require the filing before judicial review is sought. A preliminary, procedural or intermediate agency action or ruling is not immediately reviewable, except that the court may grant leave for review of such action if review of the agency's final decision or order would not provide an adequate remedy.

Delton-Kellogg does not dispute that it has not exhausted all administrative remedies, but it argues that exhaustion was not required here. As stated, exhaustion is not required "if review of the agency's final decision or order would not provide an adequate remedy," MCL 24.301, i.e., "if it would run counter to the policies which underlie the doctrine," *Int'l Business Machines Corp v Dep't of Treasury*, 75 Mich App 604, 610; 255 NW2d 702 (1977) (*IBM*). See also *Citizens for Common Sense in Gov't v Attorney General*, 243 Mich App 43, 53;

620 NW2d 546 (2000), quoting *IBM*, 75 Mich App at 610. These policies include the following:

> (1) an untimely resort to the courts may result in delay and disruption of an otherwise cohesive administrative scheme; (2) judicial review is best made upon a full factual record developed before the agency; (3) resolution of the issues may require the accumulated technical competence of the agency or may have been entrusted by the Legislature to the agency's discretion; and (4) a successful agency settlement of the dispute may render a judicial resolution unnecessary. [*IBM*, 75 Mich App at 610; see also *Citizens for Common Sense*, 243 Mich App at 53.]

Relying on *IBM*, Delton-Kellogg asserts that exhaustion was not required here because the question raised only challenged the MDE's legal authority to take the complained-of action, it was clearly framed for review, fact-finding was unnecessary, application of the MDE's expertise was not required, review by the circuit court promoted judicial economy, and the MDE did not have exclusive jurisdiction over questions of statutory authority. We disagree. The record shows that Delton-Kellogg submitted to the administrative procedure, but disrupted the progression of the otherwise cohesive process by seeking relief in the circuit court. Further, Delton-Kellogg was successful in the first level of review, regaining 162.4 FTEs. Not only will this Court not presume that administrative review is futile when the outcome has aided the party seeking review, see *Papas v Gaming Control Bd*, 257 Mich App 647, 664-665; 669 NW2d 326 (2003), but also full review through the administrative process could very well result in the reinstatement of all contested FTEs, which would provide the relief requested, rendering judicial review unnecessary. Accordingly, the interests of judicial economy are not served here by interrupting the administrative process. Given the pending appeal before the

superintendent, the disruptive potential of pursuing judicial review is a circumstance to be avoided. See *Citizens for Common Sense*, 243 Mich App at 52 ("Our Supreme Court has stated that 'administrative law dictates that courts move very cautiously when called upon to interfere with the assumption of jurisdiction by an administrative agency.' "), quoting *74th Judicial Dist Judges v Bay Co*, 385 Mich 710, 727; 190 NW2d 219 (1971). Cf. *Detroit Auto Inter-Ins Exch v Ins Comm'r*, 125 Mich App 702, 708-709; 336 NW2d 860 (1983). Therefore, we conclude that because Delton-Kellogg failed to exhaust its administrative remedies, the circuit court lacked jurisdiction over all of Delton-Kellogg's claims.

### B. DOCKET NO. 317739

Defendants next attack the circuit court's subject-matter jurisdiction to hear Galien's claims because its claim of appeal and claim for declaratory relief were combined in a single pleading. Defendants also assert that the circuit court did not have jurisdiction over Galien's claim for declaratory relief because there was no claim or controversy. Again, we review this issue de novo. *Bruley Trust*, 259 Mich App at 623.

We reject defendants' argument that the circuit court lacked jurisdiction because Galien combined the claims. A circuit court has subject-matter jurisdiction over a claim of appeal from a final administrative order or decision. MCL 600.631; MCR 7.103(A)(3) and (4). For the circuit court to be vested with jurisdiction in an appeal of right, MCR 7.104(B), provides that

> an appellant must file with the clerk of the circuit court within the time for taking an appeal:
>
> (1) the claim of appeal, and
>
> (2) the circuit court's appeal fee, unless the appellant is indigent.

Likewise, a circuit court has jurisdiction over a claim for declaratory relief "if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment," MCR 2.605(A)(2), and this jurisdiction is invoked by filing a complaint with the court, MCR 2.101. Thus, given that the circuit court has jurisdiction to hear appeals regarding final orders or decisions of the MDE, MCR 7.103(A)(3) and (4), it follows that it would have jurisdiction over Galien's claim for declaratory relief. By the plain language of the court rule, the existence of an appeal does not void jurisdiction over the declaratory judgment, as that jurisdiction applies "whether or not other relief is or could be sought or granted." MCR 2.605(A)(1).

Further, Galien's act of combining the claims into one document did not divest the circuit court of jurisdiction according to the plain language of the court rules. The record indicates, and defendants have not argued to the contrary, that Galien invoked the court's jurisdiction by filing its claim of appeal and complaint for declaratory relief and paying the fees. This was sufficient to invoke the court's jurisdiction over both claims. While it would perhaps have been advisable to bring the appeal and declaratory relief actions under separate circuit court dockets and move for consolidation, the presentation of the claims together was insufficient to divest the court of subject-matter jurisdiction. This is particularly evident given that the record indicates that the circuit court addressed the two claims separately, as reflected in its opinion and order. See *Chen v Wayne State Univ*, 284 Mich App 172, 199; 771 NW2d 820 (2009) (noting that cases consolidated for administrative convenience or judicial economy retain their separate identities).

Nevertheless, we do conclude that the circuit court did not have jurisdiction to grant declaratory relief because substantively the claim failed to address a future harm. MCR 2.605 governs declaratory judgments, reading in relevant part as follows:

(A) Power To Enter Declaratory Judgment.

(1) In a case of actual controversy within its jurisdiction, a Michigan court of record may declare the rights and other legal relations of an interested party seeking a declaratory judgment, whether or not other relief is or could be sought or granted.

(2) For the purpose of this rule, an action is considered within the jurisdiction of a court if the court would have jurisdiction of an action on the same claim or claims in which the plaintiff sought relief other than a declaratory judgment.

\* \* \*

(C) Other Adequate Remedy. The existence of another adequate remedy does not preclude a judgment for declaratory relief in an appropriate case.

\* \* \*

(F) Other Relief. Further necessary or proper relief based on a declaratory judgment may be granted, after reasonable notice and hearing, against a party whose rights have been determined by the declaratory judgment.

A case of actual controversy is a "condition precedent to invocation of declaratory relief." *Citizens for Common Sense*, 243 Mich App at 54-55 (quotation marks and citation omitted). "Generally, an actual controversy exists where a declaratory judgment is necessary to guide a plaintiff's future conduct in order to preserve the plaintiff's legal rights." *Id*. It is essential that a plaintiff "pleads facts entitling him to the judgment he

seeks and proves each fact alleged" and those facts "indicate an adverse interest necessitating the sharpening of the issues raised." *Shavers v Attorney General*, 402 Mich 554, 589; 267 NW2d 72 (1978).

Galien styled the relief requested in circuit court as declaratory relief, asserting that future retroactive audits might compel the district to refund additional state-aid monies. It is undisputed that the audits were completed by the MDE, that were they decided against Galien, and that the MDE reduced current and future school aid over a number of years to make up the deficiency revealed by the audits. These facts establish a controversy between Galien and the MDE, but a *current* conflict based on a past controversy. That the MDE allowed the funding deficits to be repaid over several years is not dispositive because the determination of the legal rights of the parties was already settled. See *Lansing Sch Ed Ass'n, MEA/NEA v Lansing Bd of Ed (On Remand)*, 293 Mich App 506, 516; 810 NW2d 95 (2011) (holding that an actual controversy was lacking because the plaintiffs had not alleged imminent injury given that the alleged physical injuries had already occurred). Accordingly, the circuit court did not have jurisdiction over Galien's claim for declaratory relief.[2]

### III. RETROACTIVE AUDITS

Defendants also argue that the circuit court improperly granted plaintiffs appellate relief on the basis of the erroneous conclusion that the MDE lacked authority to

---

[2] We note that although we conclude that the circuit court did not have jurisdiction over Delton-Kellogg's claims because of its failure to exhaust its administrative remedies, we would conclude for the reasons given here that the circuit court would not have had jurisdiction to grant declaratory relief to Delton-Kellogg even if it had exhausted its administrative remedies.

retroactively audit and adjust state school aid.[3] This issue requires us to interpret and apply various sections of the SSAA. Interpretation and application of a statute is a question of law we review de novo. *McAuley v Gen Motors Corp*, 457 Mich 513, 518; 578 NW2d 282 (1998). The foremost rule of statutory construction "is to discern and give effect to the intent of the Legislature." *Whitman v City of Burton*, 493 Mich 303, 311; 831 NW2d 223 (2013). Interpretation strives to give effect to "every phrase, clause, and word in the statute and, whenever possible, no word should be treated as surplusage or rendered nugatory." *Id.* at 311-312. Each word or phrase of a statute is given its commonly accepted meaning unless otherwise expressly defined. *McAuley*, 457 Mich at 518. "Statutes should be construed so as to prevent absurd results, injustice, or prejudice to the public interest." *Id.*

During the course of proceedings below, § 15 of the SSAA provided, in pertinent part:

> (1) . . . Subject to subsections (2) and (3), if a district or intermediate district has received more than its proper apportionment, the department, upon satisfactory proof, shall deduct the excess in the next apportionment. Notwithstanding any other provision in this article, state aid overpayments to a district, other than overpayments in payments for special education or special education transportation, may be recovered from any payment made under this article . . . .
>
> (2) If the result of an audit conducted by or for the department affects the current fiscal year membership, affected payments shall be adjusted in the current fiscal

---

[3] In light of our conclusion that the circuit court did not have jurisdiction over any of Delton-Kellogg's claims, we need not consider this issue as it relates to Delton-Kellogg. However, because our analysis of this issue is the same for both plaintiffs, we will address the issue as it relates to both plaintiffs.

year. A deduction due to an adjustment made as a result of an audit conducted by or for the department, or as a result of information obtained by the department from the district, an intermediate district, the department of treasury, or the office of auditor general, shall be deducted from the district's apportionments when the adjustment is finalized. . . . [T]he department may grant up to an additional 4 years for the adjustment . . . .

(3) If, because of the receipt of new or updated data, the department determines during a fiscal year that the amount paid to a district or intermediate district under this article for a prior fiscal year was incorrect under the law in effect for that year, the department may make the appropriate deduction or payment in the district's or intermediate district's allocation for the fiscal year in which the determination is made. [MCL 388.1615, as amended by 2012 PA 286.][4]

Further, § 18 provided, in pertinent part:

(4) For the purpose of determining the reasonableness of expenditures and whether a violation of this article has occurred, all of the following apply:

(a) The department shall require that each district and intermediate district have an audit of the district's or intermediate district's financial and pupil accounting records conducted at least annually at the expense of the district or intermediate district, as applicable, by a certified public accountant or by the intermediate district superintendent, as may be required by the department, or in the case of a district of the first class by a certified public accountant, the intermediate superintendent, or the auditor general of the city.

\* \* \*

_____

[4] 2014 PA 196 amended § 15, effective October 1, 2014, by amending the language of Subsection (3) and adding a new Subsection (4) that provided: "The department may conduct audits, or may direct audits by designee of the department, for the current fiscal year and the immediately preceding 3 fiscal years of all records related to a program for which a district or intermediate district has received funds under this article."

(d) The pupil and financial accounting records and reports, audits, and management letters are subject to requirements established in the auditing and accounting manuals approved and published by the department.

* * *

(8) The department shall review its pupil accounting and pupil auditing manuals at least annually and shall periodically update those manuals to reflect changes in this article. [MCL 388.1618, as amended by 2012 PA 201.][5]

And § 168 provided:

In order to receive funds under this act, a district . . . or other entity that directly or indirectly receives funds under this act shall allow access for the department or the department's designee to audit all records related to a program for which it receives such funds. The district . . . or other entity shall reimburse the state for all disallowances found in the audit. [MCL 388.1768, as amended by 1993 PA 175.][6]

Section 168, which empowers the MDE "to audit all records related to a program," notes that it is applicable to "funds under this act," indicating that the powers and definitions in § 168 applied to the entire SSAA.[7] Thus, the ability to access the records to conduct an audit applied to the other sections under consideration here, including §§ 15 and 18. Although the MDE is

---

[5] 2014 PA 196 also amended § 18(4)(a) to indicate that audits could be conducted "at such other times as determined by the department" and that districts "shall retain these records for the current fiscal year and from at least the 3 immediately preceding fiscal years."

[6] 2014 PA 196 amended § 168 to change references from "this act" to "this article" and require access related to programs for which funds have been received "for any of the 3 immediately preceding fiscal years."

[7] 2014 PA 196 did not change this. While it refers to "this article" rather than "this act," the reference is to the article of the SSAA that governs public schools.

clearly empowered to audit, the question is whether it may retroactively audit.

We conclude that when they are read together in their entirety, the interplay of §§ 15 and 168 authorizes the MDE to conduct retroactive audits. MCL 388.1615(3) provides:

> If, because of the receipt of new or updated data, the department determines during a fiscal year that the amount paid to a district or intermediate district under this article for a prior fiscal year was incorrect under the law in effect for that year, the department may make the appropriate deduction . . . in the district's or intermediate district's allocation for the fiscal year in which the determination is made.

Section 15(3) clearly empowers the MDE to make deductions from a district's allocation for incorrect allocations related to a prior fiscal year. Any deduction is driven by the "receipt of new or updated data." Further, § 168 required districts to "allow access for the department or the department's designee to audit all records related to a program for which it receives such funds." MCL 388.1768. "All records" necessarily includes past and present records and the right of access to complete an audit is given to the MDE. MCL 388.1615(3), unlike MCL 388.1615(2), does not use the term "audit," but that is the most likely avenue for the MDE to receive new or updated data, especially given the reference to audits in MCL 388.1615(2). The MDE clearly has audit power and there is no indication in § 15(3) that this power cannot be used to gather "new or updated data." Therefore, the audit power can act retroactively to gather updated data on a prior fiscal year.[8] Accordingly, we hold that the circuit

---

[8] We reject Galien's argument that the amendments made by 2014 PA 196 indicate that the MDE previously lacked the authority to conduct retroactive audits. As we have concluded, before the amendments, the

court erred by concluding that the MDE did not have the authority to retroactively audit.

### IV. CONCLUSION

In Docket No. 317734, we vacate the circuit court's order in its entirety and direct Delton-Kellogg to exhaust its administrative remedies before seeking judicial review.

In Docket No. 317739, we vacate the circuit court's order in its entirety and remand for reinstatement of the superintendent's March 14, 2013 final decision.

SAAD, P.J., and OWENS and K. F. KELLY, JJ., concurred.

---

SSAA clearly granted the MDE the authority to conduct retroactive audits. The recently passed amendments simply clarify this authority by specifically limiting the scope of audits and recordkeeping requirements to three years, rather than an undefined period.