# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ANTONIO LUIS RIVERA,

        Defendant-Appellant.

UNPUBLISHED
February 8, 2018

No.  336384
Ottawa Circuit Court
LC No.  16-040398-FC

---

Before:  MARKEY, P.J., and SHAPIRO and GADOLA, JJ.

PER CURIAM.

A jury convicted defendant of second-degree criminal sexual conduct (CSC-II), MCL 750.520c(1)(a) (sexual contact with another person under 13 years of age), and the trial court sentenced him to 84 to 180 months' imprisonment for the CSC-II conviction.  Defendant now appeals.  For the reasons set forth below, we affirm his conviction but remand for resentencing.

## I. BACKGROUND FACTS

This case arises out of several alleged instances of defendant's sexual contact with his girlfriend's six-year-old daughter (the victim).  The victim testified that on her sixth birthday, defendant hurt her by placing "his no-nos inside [her] no-no."  Further, the victim testified that defendant hurt her in the bathroom at her house on more than one occasion.  She stated that defendant warned her not to tell anyone.

The victim's biological father testified that in June 2016, the victim displayed inappropriate sexual behavior.  The victim's father testified he asked his daughter where she learned that behavior from, and she replied that she learned it from defendant.  After learning of the allegation, the victim's mother placed a hidden camera on the bathroom counter.  Eventually, she observed something that concerned her enough to call the Children's Advocacy Center and the police.  All three recordings on this camera involved defendant and the victim.  The victim's mother took her for a medical exam at the Children's Advocacy Center where Julie Mascorro, a registered nurse with the Children's Advocacy Center, took the victim's medical history.  At trial, the prosecutor asked Nurse Mascorro what the victim said happened to her.  Defense counsel objected on hearsay grounds.  The prosecutor argued that the testimony was admissible under MRE 803, and the trial court allowed the testimony.

-1-

## II. LEGAL ANALYSIS

### A. MRE 803

On appeal, defendant first argues that the trial court erred by admitting Nurse Mascorro's testimony regarding the victim's description of the alleged assault. We disagree.[1]

Under the Michigan Rules of Evidence, hearsay "is a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay statements are generally inadmissible unless an exception applies. MRE 802.

Although the trial court did not indicate which hearsay exception it utilized to admit the testimony, we agree with the parties that Nurse Mascorro's statements were inadmissible under MRE 803A,[2] which provides a "tender years" exception for a child's statement regarding sexual

---

[1] "A trial court's decision to admit or exclude evidence is reviewed for an abuse of discretion." *People v Burns*, 494 Mich 104, 110; 832 NW2d 738 (2013). "A trial court abuses its discretion when its decision falls outside the range of principled outcomes." *People v Feezel*, 486 Mich 184, 192; 783 NW2d 67 (2010) (quotation marks and citation omitted). "Preliminary questions of law, including whether a rule of evidence or statute precludes admissibility of the evidence, are reviewed de novo." *Burns*, 494 Mich at 110.

[2] MRE 803A provides:

A statement describing an incident that included a sexual act performed with or on the declarant by the defendant or an accomplice is admissible to the extent that it corroborates testimony given by the declarant during the same proceeding, provided:

(1) the declarant was under the age of ten when the statement was made;

(2) the statement is shown to have been spontaneous and without indication of manufacture;

(3) either the declarant made the statement immediately after the incident or any delay is excusable as having been caused by fear or other equally effective circumstance; and

(4) the statement is introduced through the testimony of someone other than the declarant.

If the declarant made more than one corroborative statement about the incident, only the first is admissible under this rule.

assault. The rule requires that the statement must be spontaneous and that the prosecution must provide notice of its intent to introduce the evidence at trial. MRE 803A(2) & (4). Here, the victim made the statement to Nurse Mascorro in response to direct questions about the alleged sexual abuse by defendant. Additionally, there is no evidence in the record that the prosecution provided defendant with a notice of intent to offer Nurse Mascorro's testimony under this rule.

However, we conclude that the statements were admissible under MRE 803(4).[3] "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).[4]

As a general rule, identification of a victim's assailant is not reasonably necessary for diagnosis and treatment. *People v Lalone*, 432 Mich 103; 437 NW2d 611 (1989). In that case, the Supreme Court noted that "[i]t has long been the rule that the declarant's naming of the person responsible for their condition may not be admitted pursuant to the hearsay exception described in MRE 803(4)," and it excluded such statements made to a psychologist on the grounds that the identification of a perpetrator went beyond the rules allowed under the hearsay exception to describe the "general character of the cause or external source thereof." *Id*. at 110. However, in *People v Meeboer (After Remand)*, 439 Mich 310, 324-326; 484 NW2d 621 (1992), the Supreme Court modified *Lalone* insofar as it relates to child victims of sexual abuse. It noted that in such cases, identification of the perpetrator is generally relevant both to treating the child's psychological injuries and to assuring the child's safety which is part of the treatment. *Id*. at 329-330.

---

A statement may not be admitted under this rule unless the proponent of the statement makes known to the adverse party the intent to offer the statement, and the particulars of the statement, sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet the statement.

This rule applies in criminal and delinquency proceedings only.

[3] MRE 803(4) provides that the following statements are not hearsay:

(4) Statements Made for Purposes of Medical Treatment or Medical Diagnosis in Connection With Treatment. Statements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably necessary to such diagnosis and treatment.

[4] Where the trial court reaches the right result, albeit for the wrong reason, this Court will not reverse. *Zimmerman v Owens*, 221 Mich App 259, 264; 561 NW2d 475 (1997).

*Meeboer* did not, however, expand MRE 803(4) to all such identifications by a child because it recognized that a child may not understand the need to be truthful in the medical treatment setting which is the underlying basis for the hearsay exception. The Court therefore held that a child's statement must also be found trustworthy to be admitted under MRE 803(4). *Meeboer*, 439 Mich at 324-326. The totality of the circumstances must be considered when determining trustworthiness. *Id.* at 324-325. Some of the factors to be considered include:

> (1) the age and maturity of the declarant, (2) the manner in which the statements are elicited (leading questions may undermine the trustworthiness of a statement), (3) the manner in which the statements are phrased (childlike terminology may be evidence of genuineness), (4) use of terminology unexpected of a child of similar age, (5) who initiated the examination (prosecutorial initiation may indicate that the examination was not intended for purposes of medical diagnosis and treatment), (6) the timing of the examination in relation to the assault (the child is still suffering pain and distress), (7) the timing of the examination in relation to the trial (involving the purpose of the examination), (8) the type of examination (statements made in the course of treatment for psychological disorders may not be as reliable), (9) the relation of the declarant to the person identified (evidence that the child did not mistake the identity), and (10) the existence of or lack of motive to fabricate. [*Meeboer*, 439 Mich at 3240325.]

In this case, there was sufficient evidence of trustworthiness to allow admission of the statements. The victim's statements were corroborated by her own testimony at trial, in her statements to her parents, and in the recordings recorded from the hidden camera in the bathroom. The victim was six years old at the time of the sexual abuse, and she utilized child-like terminology to describe her private area as "no-no." The victim could not have mistaken defendant's identity because he had been at her home as her babysitter. The victim also had no apparent motivation to lie. Moreover, the examination, which was initiated by the victim's mother after she viewed the contents of the hidden camera, was conducted almost a month after the victim revealed the sexual abuse to her parents. Nurse Mascorro testified that the purpose of the examination was for diagnosis and treatment of the victim. Accordingly, based on the totality of the circumstances, the statements made by the victim to Nurse Mascorro appear to be trustworthy, and the testimony is admissible hearsay under MRE 803(4). Thus, Nurse Mascorro's testimony was properly admitted by the trial court as a hearsay exception, and the outcome at trial would have not been different if the trial court admitted the testimony under this hearsay exception. *People v Lukity*, 460 Mich 484, 495; 596 NW2d 607 (1999*)*.

B. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court erred by admitting other-acts evidence under MCL 768.27a because it was unfairly prejudicial and should have been excluded under MRE 403. We disagree.[5]

MCL 768.27a states, in pertinent part:

> (1) Notwithstanding section 27, in a criminal case in which the defendant is accused of committing a listed offense against a minor, evidence that the defendant committed another listed offense against a minor is admissible and may be considered for its bearing on any matter to which it is relevant. If the prosecuting attorney intends to offer evidence under this section, the prosecuting attorney shall disclose the evidence to the defendant at least 15 days before the scheduled date of trial or at a later time as allowed by the court for good cause shown, including the statements of witnesses or a summary of the substance of any testimony that is expected to be offered.

Evidence introduced at trial must be relevant, meaning it has "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence," in order to be admissible. MRE 401; MRE 402. "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." MRE 403. "Unfair prejudice may exist where there is a danger that the evidence will be given undue or preemptive weight by the jury or where it would be inequitable to allow use of the evidence." *People v Blackston*, 481 Mich 451, 462; 751 NW2d 408 (2008).

During trial, the trial court admitted the testimony of defendant's 20-year-old biological daughter who testified that defendant sexually assaulted her when she was five or six years old. Specifically, she testified that on one occasion, defendant asked her if she wanted a sucker, and that when she said yes, he blindfolded her and put his penis in her mouth. On another occasion, she remembered that when defendant was starting a bath for her, she was bleeding but could not recall why. The statute, MCL 768.27a, "establish[ed] an exception to MRE 404(b) in cases involving a charge of sexual misconduct against a minor." *People v Watkins*, 491 Mich 450, 471; 818 NW2d 296 (2012). As we have previously noted:

---

[5] "This Court reviews a trial court's evidentiary ruling for an abuse of discretion." *People v Benton*, 294 Mich App 191, 195; 817 NW2d 599 (2011). "When the trial court selects one of these principled outcomes, the trial court has not abused its discretion and, thus, it is proper for the reviewing court to defer to the trial court's judgment." *Id.* (quotation marks and citation omitted). The effect of an evidentiary error is "evaluated by assessing it in the context of the untainted evidence to determine whether it is more probable than not that a different outcome would have resulted without the error." *Lukity*, 460 Mich at 495. Preliminary questions of law, including whether a rule of evidence or statute precludes admissibility of the evidence, are reviewed de novo. *Id.* at 488.

When a defendant is charged with a sexual offense against a minor, MCL 768.27a allows prosecutors to introduce evidence of a defendant's uncharged sexual offenses against minors without having to justify their admissibility under MRE 404(b). In many cases, it allows evidence that previously would have been inadmissible, because it allows what may have been categorized as propensity evidence to be admitted in this limited context. . . . [*People v Pattison*, 276 Mich App 613, 618-619; 741 NW2d 558 (2007).]

Therefore, MCL 768.27a supersedes MRE 404(b). Accordingly, in this case, defendant's biological daughter's testimony about defendant's prior uncharged sexual offenses, when she was a minor, was admissible for any relevant purpose. MCL 768.27a. These two incidents were relevant to demonstrate that defendant had committed similar sexual behavior in the past against a minor of the same age, and thus, likely sexually assaulted the victim in this case. *Pattison*, 276 Mich App at 618-619.

This other-acts evidence is still subject to MRE 403. *Watkins*, 491 Mich at 496. But in this case, the evidence was not unfairly prejudicial because the evidence supported the victim's credibility and presented circumstances similar to those underlying the charged offense. *Id.* at 487 (holding that "other-acts evidence admissible under MCL 768.27a may not be excluded under MRE 403 as overly prejudicial merely because it allows a jury to draw a propensity inference"). These incidents, including the current case, involved defendant's sexual contact with a six-year-old girl in a bathroom. The fact that defendant's charged and uncharged acts involved sexual conduct committed against minors of the same age, who were close to defendant, increased the probative value of the other-acts evidence. Further, even though defendant points out that the other acts occurred over 15 years ago, "[t]he remoteness of the other act[s] affects the weight of the evidence rather than its admissibility." *People v Brown*, 294 Mich App 377, 387; 811 NW2d 531 (2011). Thus, the other-acts evidence tended to show defendant's common scheme or plan as well as his identity as the perpetrator.

The trial court also ensured that the jury properly utilized this other-acts evidence by instructing the jury that defendant was not on trial for the uncharged act; rather, that they may only consider the evidence if they find that defendant committed the sexual acts in the present case. Therefore, the instruction helped reduce any unfair prejudice, and the probative value of the evidence was not substantially outweighed by the danger of unfair prejudice. MRE 403; *Blackston*, 481 Mich at 462. Accordingly, the trial court did not abuse its discretion by admitting other-acts evidence under MCL 768.27a, and defendant is not entitled to relief.

## C. SENTENCING

Defendant next argues that the sentence imposed by the trial court was unreasonable and disproportionate and that he is entitled to resentencing.[6]

---

[6] "A sentence that departs from the applicable guidelines range will be reviewed by an appellate court for reasonableness." *People v Lockridge*, 498 Mich 358, 391-392; 870 NW2d 502 (2015).

In *People v Lockridge*, 498 Mich 358, 387-389; 870 NW2d 502 (2015), the Michigan Supreme Court held Michigan's mandatory sentencing guidelines unconstitutional because they allowed defendant's minimum sentences to be increased based on facts found by a judge rather than by a jury beyond a reasonable doubt, as the Sixth Amendment requires. Accordingly, sentencing guidelines are now considered advisory, not mandatory, in determining a defendant's sentence, and departures from the sentencing guidelines are to be reviewed on appeal for reasonableness. *Id*. at 391-392. When reviewing for reasonableness, this Court follows the principles set forth in *People v Milbourn*, 435 Mich 630; 461 NW2d 1 (1990), assessing whether the sentence given is proportionate to the offender and to the seriousness of the crime. *Steanhouse*, 500 Mich at 476-477. Additional factors considered by Michigan courts under the proportionality standard include:

> (1) the seriousness of the offense; (2) factors that were inadequately considered by the guidelines; and (3) factors not considered by the guidelines, such as the relationship between the victim and the aggressor, the defendant's misconduct while in custody, the defendant's expressions of remorse, and the defendant's potential for rehabilitation. [*People v Steanhouse (On Remand)*, ___ Mich App ___, ___; ___ NW2d ___ (2017); slip op at 3.]

"[A] departure sentence may be imposed when the trial court determines that 'the recommended range under the guidelines is disproportionate, in either direction." *Steanhouse (On Remand)*, ___ Mich App at ___; slip op at 3. "An appellate court must evaluate whether reasons exist to depart from the sentencing guidelines and whether the *extent* of the departure can satisfy the principle of proportionality." *Id.* "The first inquiry in our reasonableness review is whether there were 'circumstances that are not adequately embodied within the variables used to score the guidelines.' " *Id*. citing *Milbourn*, 435 Mich at 659-600.

Defendant was convicted of CSC-II, MCL 750.520c(1)(a), which is a Class C felony. MCL 777.16y. After the trial court scored the sentencing guidelines for the CSC-II offense, defendant had a prior record variable (PRV) score of 5 and offense variable (OV) score of 45. These scores placed defendant in PRV level B and OV level IV. The minimum sentence range was 19 to 38 months' imprisonment. MCL 777.64. The trial court sentenced defendant to a term of 84 to 180 months' imprisonment for the CSC-II conviction, an upward departure from the sentencing guidelines range.

Defendant's minimum sentencing guidelines range was 19 to 38 months' imprisonment, but defendant was sentenced to a minimum term of 84 months' imprisonment, a departure of 46 months over the maximum minimum sentence of 38 months. This is more than a 100% increase

---

"[T]he standard of review to be applied by appellate courts reviewing a sentence for reasonableness on appeal is abuse of discretion." *People v Steanhouse*, 500 Mich 453, 471; 902 NW2d 327 (2017). In determining whether a trial court abused its discretion by unreasonably departing from the sentencing guidelines, we review whether the court conformed to the principle of proportionality set forth in *People v Milbourn*, 435 Mich 630, 461 NW2d 1(1990). *Steanhouse*, 500 Mich at 476-477.

over the highest possible minimum sentence within the guidelines. At sentencing, the trial court explained its deviation from the guidelines as follows:

> In this case, the Court is going to impose a sentence in excess of the guidelines. The Court is going to do this because—and the Court imposes this—the Court recognizes that the guidelines are only advisory. The Court does not feel bound by the guidelines. But the purpose of this sentence above the guidelines is that we had a very vulnerable and extremely young child in this case, there was a position of trust that was repeatedly violated between the Defendant and the child, that there were multiple incidences of preying on this child sexually, there was the infliction of pain, there is the harm to the family that resulted from this behavior, not only psychological, but, primarily—but also, financial harm. And more importantly than any of these factors . . . Defendant does present a danger to young children because there is evidence that he preyed on his own child, and this is a continuing pattern of behavior which is not likely to change, in my judgment.

The trial court's reasons for the more than 100% upward departure from the top of the guidelines references, almost exclusively, factors considered in the charge and the sentencing guidelines. The age of the victim is a factor in the charge and conviction of CSC II, a fifteen-year felony, which elevates what could have otherwise been charged as CSC IV, a two-year misdemeanor because the victim is "under 13 years of age." The vulnerability of the child is accounted for in OV 10 for which defendant was scored 10 points and OV 4 for which defendant was scored 10 points for psychological injury. That there were multiple incidences of abuse was scored in OV 13, which addresses continuing pattern of criminal behavior. Notably, the trial court did not explain the basis for its conclusion that the sentencing guidelines' consideration of these factors was inadequate in this case.[7]

The trial court did reference two significant factors not fully considered by the sentencing guidelines. First, though defendant was scored 10 points under OV 10 due to the victim's age, he could also have been scored under that variable for abusing his authority status and because the abuse occurred within a domestic relationship. Had he been scored an additional 10 points, this would have placed defendant in a different grid. However, even if defendant had been placed in the highest OV level, his guideline range would have been 29-57 months, much less than the sentence he received. Second, the trial court considered defendant's prior history of similar behavior involving his biological daughter years ago. From this, the trial court concluded that defendant lacked rehabilitative potential because his behavior of sexually preying on children had continued. We agree that this is a relevant sentencing consideration that the

---

[7] "To conduct such an analysis, we must compare the stated reasons for exceeding the guidelines with the scored offense variables (OVs) to determine whether those reasons were already encompassed within the guidelines." *Steanhouse (On Remand)*, ___ Mich App at __; slip op at 3. "Specifically, we must determine whether the trial court abused its discretion by imposing a departure sentence without articulating whether the guidelines adequately took into account the conduct alleged to support the particular departure imposed." *Id.*

guidelines did not account for and we agree that some departure from the guidelines was properly based upon it. However, even if defendant had been charged as a second habitual offender, his guideline range would have been 19-47 months. Indeed, if defendant had been considered a fourth habitual offender, his guideline range would have been 19-76 months.

In sum, while the trial court did not abuse its discretion in concluding that the recommended guideline range was disproportionately low, defendant is entitled to resentencing because "the *extent* of the departure [did not] satisfy the principle of proportionality" for the reasons just reviewed. *Steanhouse (On Remand)*, ___ Mich App at ___; slip op at 3.

Defendant's conviction is affirmed. His sentence is vacated and the matter remanded for resentencing. We do not retain jurisdiction.

/s/ Jane E. Markey
/s/ Douglas B. Shapiro
/s/ Michael F. Gadola